HALL, Judge.
Charles H. Martin and W.H. Martin appeal two orders entered on March 27, 1985, finding them in indirect criminal contempt. The orders held Charles and W.H. to be ⅛ contempt of a mandatory injunction issued by the court on June 20, 1983, ordering the Martins to remove all buried fill in their Tyler Road borrow pit commencing no later than June 29, 1983, to give Pinellas County “proper notice and opportunity to monitor the removal,” and to cease “further dumping or burying of any further material into the area of the Tyler Road borrow pit without further leave of court.”
The first order found Charles Martin to be in contempt of the monitoring provision of the mandatory injunction, and the court sentenced him to five days in the county jail. In this appeal Charles contends (1) that the state failed to prove beyond a reasonable doubt that he willfully violated the court order, (2) that the order did not sufficiently charge him with the knowledge of what he was required to do, and (3) that his right to a speedy trial was violated. We agree with the first and second contentions and reverse Charles Martin’s judgment and sentence in the first order.
The second order found both Charles and W.H. to be in contempt of the dumping provision of the mandatory injunction, and the court sentenced both parties to five days in the county jail. Charles contends that his actions with regard to removal of the fill dirt were not intended as noncompliance with the mandatory injunction. W.H. contends that there is no evidence that he participated in any way in the removal of the fill dirt and that his right to a speedy trial was violated. We find no merit to these contentions, as there is sufficient, competent evidence for the court to find that the Martins did remove fill dirt contrary to the mandatory injunction. We affirm the Martins’ judgments and sentences in the second order.
On June 20, 1983, an emergency mandatory injunction was entered directing the Martins, inter alia, to remove all the buried fill from their Tyler Road borrow pit in Pinellas County and to give the county “proper notice and opportunity to monitor the removal....”
On March 5, 1984, Ralph Ethridge, a county employee assigned to monitor the fill removal, went to Charles Martin’s house, which is next to the Tyler Road pit, introduced himself, and notified Martin that he was present to carry out his duties that day. Martin consented and Ethridge proceeded to the pit and began taking photographs, which activity he had not stated would be part of his monitoring duties. Martin approached Ethridge and demanded that Ethridge give him the film from the camera. Ethridge refused and Martin ordered him off his property. Several hours later, on instructions from his superiors, Ethridge proceeded across the road from the borrow pit to the area, also owned by the Martins, at which the fill material removed from the pit was being dumped. Ethridge parked his vehicle, surveyed the *447 area, and noticed an approaching van driven by Charles Martin. The van, after stopping at the gate to the fenced in depository site, was parked in front of the only available exit. Ethridge, unable to leave, secured himself in his truck and reported on his two-way radio that he was “being ambushed.” At this point, W.H. Martin, who also lives next to the Tyler Road borrow pit, arrived on the scene. The men told Ethridge to get out of the truck so they could speak with him. Ethridge refused and the Martins then went to call their attorney. Approximately six to ten minutes later the Martins returned with a deputy sheriff, and the situation was defused.
On March 6, 1984, the county filed a motion to hold Charles Martin in contempt of the emergency mandatory injunction for falsely imprisoning Ralph Ethridge. The motion was treated as a petition for order to show cause, and after a subsequent hearing, Charles Martin was adjudicated guilty of indirect criminal contempt for disobeying the court’s orders regarding the county’s right to monitor the properties involved during the excavation process.
We have held that “[a] party may not be held in contempt of court for violating an order which is not clear in its command and direction.” Loury v. Loury, 431 So.2d 701, 703 (Fla. 2d DCA 1983). We find that the orders for which Charles Martin was held in contempt are not clear in their directions regarding where he was to allow the county to conduct its monitoring activities. Consequently, Charles Martin cannot be held in contempt of those orders for not allowing Ethridge to monitor his depository site across the road from his borrow pit. Furthermore, in light of Charles Martin’s initial consent to Eth-ridge’s monitoring of his property, it is not evident beyond a reasonable doubt that Martin intended to violate the court’s order through his later conduct.
The Martins also contend that they were denied their right to a speedy trial because the trial court did not issue orders to show cause until over seven months after it orally decided to treat the county’s motions for contempt as petitions for orders to show cause. However, as the Martins concede, the right to a speedy trial regarding a charge of indirect criminal contempt does not commence until an order to show cause is issued. An order to show cause is the charging document in a criminal contempt proceeding, just as an information is the charging document in a criminal case. Brinson v. State, 269 So.2d 373 (Fla. 1st DCA 1972). The orders to show cause were issued on February 5,1984, and were heard on February 19, 1985. Consequently, there was no violation of the Martins’ right to a speedy trial.
Reversed in part and affirmed in part.
DANAHY, A.C.J., and SCHOONOVER, J., concur.